COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

DONALD CLARK

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 17835-01
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

SENTENCE VACATED AND REMANDED.

Ronald A. Rossitto, District Attorney
David L. Kimball, Assistant District Attorney
Carla S. Sigler, Assistant District Attorney
P.O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
Counsel for Appellee:
    State of Louisiana

Peggy J. Sullivan
Louisiana Appellate Project
P. O. Box 2775
Monroe, LA 71207-2775
(318) 387-6124
Counsel for Defendant/Appellant:
    Donald Clark

**DECUIR, Judge.**

The Defendant, Donald Clark, comes before this court for the second time, now asking for review of the sentence imposed upon him after remand. In our initial decision, we reversed the Defendant's conviction of forcible rape and found the evidence supported a conviction of the lesser included responsive offense of simple rape. Originally, he was sentenced to forty years which, upon reconsideration, was reduced to twenty-five years, the first ten to be served without benefit of probation, parole, or suspension of sentence. We vacated the sentence and remanded the matter for sentencing. *State v. Clark*, 04-901 (La.App. 3 Cir. 12/8/04), 889 So.2d 471.

On February 18, 2005, the Defendant was sentenced to serve fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. He filed an appeal and is now before this court asserting one assignment of error. He alleges his sentence is excessive. For the reasons set forth herein, we vacate the sentence imposed and again remand for resentencing. The net effect of the sentence imposed may well be harsher than the previous sentence which was imposed on a more serious crime.

## FACTS

The Defendant, a thirty-one year old single father and National Guardsman, was accused by C.T. of the crime of rape. From the outset, the Defendant admitted to engaging in a sexual encounter with C.T. on May 6, 2001, but he maintains the act was consensual. In fact, both the Defendant and C.T., along with the other witnesses, agree as to much of what transpired on the evening of May 5 and the morning of May 6, 2001.

At the time of the incident at issue, C.T., twenty-six, was a resident of Austin, Texas, where she lived with her husband and two young children. She traveled to Lake Charles that weekend with her son to attend the wedding of two friends, Christina and Reginald Ewing. After the wedding reception, C.T., along with the bride and groom and many other wedding guests, went to the Ewings' house to continue the festivities. At one point, Reginald left to pick up his cousin, the Defendant, so he could join everyone at the Ewings' house. C.T. and the Defendant met for the first time that evening.

Later that night, C.T. and three other women decided to go out to a few bars, including The Keg and The Doll House. The group consisted of the Defendant's sister, Michelle Clark; Meredith Shrimp, who had traveled with C.T. from Austin; and Candace Cole. The Defendant and his cousin, Derrick Malbrew, went along with the four women. Both the Defendant and C.T. testified that the group danced together and were very friendly. C.T. could not deny that she might have held hands with the Defendant and may have sat on his lap. While at The Doll House, C.T. and the Defendant left for a while; she testified they left to visit a bar called Crystal's, and he testified they left to have a brief sexual encounter in his sister's car.

The group then returned to the Ewing house where C.T. and Candace Cole planned to spend the night. Michelle Clark dropped the others off and left. Cole proceeded to go to bed. Meredith Shrimp called a friend who came over with some marijuana, which he shared with Shrimp and C.T. C.T. also admitted to taking a muscle relaxer given to her by another guest. Derrick Malbrew visited with them while they smoked the marijuana. The Defendant disappeared for a while, then left with Malbrew in the early morning hours. Cole later told C.T. he had come into the room where she was sleeping, got into bed with her, and rubbed his penis on her. He left when she told him to go. The Defendant admitted lying down with Cole but denied the sexual advance. He testified that he asked to follow her into her room when he saw the drugs in the living room.

C.T. testified that after Shrimp left with her friend, she locked the house and prepared for bed. She changed from a skirt, shirt, and thong into boxer shorts and a tee shirt to sleep in. She testified that after sleeping for a while she was awakened by the sound of the Defendant coming into her room. He took off his clothes, got in bed with her, and proceeded to have sex with her. She testified that she was "frozen" and did not fight him off, scream to Cole for help, or try to get away. Rather, she pleaded with him to stop and was overpowered by him, a two hundred pound man. She stated that he pinned her down, but he did not threaten her and was not violent with her. She acknowledged she had no bruises or other physical injuries from the incident. The Defendant agreed that he returned to the Ewing house that morning, but he testified the sexual act was consensual and C.T. never asked him to stop. Both agreed the Defendant then cleaned himself up with a towel lying on the floor, kissed C.T. on the forehead, and asked her if he would see her later at a barbecue for the Ewings. He then left.

C.T. returned to her home in Austin that day and informed her husband that she had been raped. The following morning, the couple drove to Lake Charles and reported the rape to the police.

*Id*. at 472-73.

The evidence also revealed the following:

2

Between approximately 10:00 p.m. on May 5, 2001 and 4:00 a.m. on May 6, 2001, C.T. consumed alcohol, smoked marijuana, and took what she thought was a muscle relaxer. Tammy Cane, a witness for the defense, testified that she saw C.T. at The Doll House and she seemed to be intoxicated. When asked if he could see the effects of the marijuana and pill taken by C.T., Derrick Malbrew testified that at 3:00 a.m., she appeared tired and could barely keep her eyes open. Blood tests performed on C.T. at the hospital on May 7 showed the presence of marijuana and another drug, benzodiazepine.

*Id*. at 474.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the Defendant contends the sentence imposed constitutes an excessive sentence under the facts and circumstances of this case and considering his personal history. The Defendant also contends the trial court failed to indicate that it considered mitigating and aggravating circumstances in this matter.

The Defendant received a sentence of fifteen years at hard labor for simple rape to be served without benefit of probation, parole, or suspension of sentence. Louisiana Revised Statute 14:43 provides for a sentence of zero to twenty-five years to be served with or without hard labor and without benefit of probation, parole, or suspension of sentence.

The record does not indicate the Defendant filed a motion to reconsider sentence, nor does the record indicate the Defendant orally objected to the sentence at the sentencing hearing. According to La.Code Crim.P. art. 881.1, failure to make or file a motion to reconsider sentence precludes a defendant from raising, on appeal, any objection to the sentence. However, in this case, the interests of justice require review of the Defendant's sentence for bare excessiveness. *State v. Graves*, 01-0156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-0029 (La. 10/14/02), 827 So.2d 420.

This court has set forth the standard for reviewing a sentence for excessiveness:

3

The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [*State v.*] *Lisotta*, [98-646 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57,] 58 [,*writ denied*, 99-0433 (La. 6/25/99), 745 So.2d 1183], stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59.

The record reveals the following facts relevant to review within the guidelines articulated in La.Code Crim.P. art. 894.1: The Defendant was thirty-one years old at the time of the offense. He is a single father raising his daughter alone. He spent over twelve years as a member of the U.S. Army, receiving an honorable discharge, and, later, the National Guard. His mother, sister, and daughter testified on his behalf. He expressed an acceptance of responsibility for his actions which constituted simple rape and apologized to the victim and her family. Finally, the Defendant is a first felony offender.

Regarding aggravating factors, there is only one – the allegation that Defendant attempted sexual contact with another woman on the night of this offense, but she declined his advances. Other than the facts which constitute the elements of simple rape, there is nothing in the record to warrant a fifteen-year sentence for this defendant. By way of analogy, we refer to the case of *State v. Sergon*, 449 So.2d 193 (La.App. 3 Cir. 1984). There the defendant pled guilty to simple rape of a mental patient at Pinecrest State Hospital. The trial court determined the victim did not understand the nature of the offense because of her mental condition and the defendant, a twenty-nine-year-old member of the Louisiana National Guard, knew of the victim's incapacity. This court held the defendant's sentence of five years at hard labor was not excessive.

We direct the sentencing court's attention to the fact that a sentence of five years or less is appropriate in this case. See La.Code Crim.P. art 881.4(A).

**DECREE**

Accordingly, the Defendant's sentence is vacated and this matter is remanded for resentencing. We specifically instruct the sentencing court that any sentence in excess of five years, under these facts, is excessive.

**SENTENCE VACATED AND REMANDED.**