# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-621

**STATE OF LOUISIANA**

**VERSUS**

**JACOB MARTIN MICHOT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 354,429
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Hon. J. Phillip Terrell, Jr.**
**Ninth Judicial District Attorney**
**Lea R. Hall, Jr.**
**Assistant District Attorney**
**Kenneth A. Doggett, Jr.**
**Assistant District Attorney**
**P. O. Box 7358**
**Alexandria, LA 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**William P. Gibbens**
**Ian L. Atkinson**
**Gwyneth O'Neill**
**Schonekas, Evans, McGoey & McEachin, L.L.C.**
**909 Poydras Street, Suite 1600**
**New Orleans, LA 70130**
**(504) 680-6050**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jacob Martin Michot**

**GREMILLION, Judge.**

On March 22, 2022, a grand jury returned a true bill of indictment charging Defendant, Jacob Martin Michot, with one count of third-degree rape, a violation of La.R.S. 14:43(A)(4), and five counts of indecent behavior with a juvenile, all violations of La.R.S. 14:81(A)(1). Defendant pled not guilty to these charges on May 10, 2022; however, on February 23, 2023, the State amended the indictment, charging Defendant with a total of four sex crimes: one count of third-degree rape, two counts of indecent behavior with a juvenile, and one count of pornography involving a juvenile in violation of La.R.S. 14:81.1(A)(1) and La.R.S. 14:81.1(E)(1)(a).

To this amended indictment, Defendant and the State entered into a plea agreement, in which the State promised that Defendant's sentences would run concurrently. "Mr. Michot's total possible exposure on all charges. . ." said the trial court, "could have resulted in sixty-four years in prison." By pleading guilty, however, Defendant limited his exposure to twenty-five years, "resulting in a substantial benefit." Ultimately, Defendant was sentenced to the full extent of his agreed exposure.

For the crime of third-degree rape, the trial court sentenced Defendant to twenty-five years at hard labor, without benefit of parole, probation, or suspension of sentence; for each count of indecent behavior with juveniles, seven years at hard labor; for the crime of pornography with juveniles, five years at hard labor without benefits–all set to run concurrently.

There is no dispute Defendant understood that by signing this plea bargain he would forgo his right to appeal his plea. His attorney indeed made it perfectly plain when he instructed Defendant to sign the plea agreement and informed him: "That's

where it basically says this is over, this case is over." The trial court also told Defendant, "Since this is a plea of guilty and waiver of rights form that you've signed pleading guilty to the charge, you cannot appeal your guilty plea." When the trial court asked if he understood, Defendant replied, "Yes, sir." However, at both the plea hearing and the sentencing hearing, the trial court informed Defendant that though he waived his right to appeal his convictions, his sentences remained appealable, since he did not agree "to any sentence, any sentencing ceilings, or any ranges or caps."

Defendant's sole assignment of error challenges the trial court's decision to impose the statutory maximum of twenty-five years at hard labor for his offense of third-degree rape. Defendant argues his sentence was constitutionally excessive given the facts and circumstances of his case. For the following reasons, Defendant's sentence is affirmed.

## FACTS

The four charges to which Defendant pled guilty concerned incidents occurring over more than a year, from August 1, 2020, to January 20, 2022. Beginning with the third-degree offense, on or about and between November 17, 2021, and November 30, 2021, Defendant had vaginal sexual intercourse with L.B.,[1] a sixteen-year-old, without her consent. Between August 1, 2020, and August 31, 2020, Defendant committed a lewd and lascivious act upon K.W. who was fifteen at the time of the offense and at least two years younger than him. On or about November 25 and November 26, 2021, Defendant, who was then nineteen years old, committed a lewd and lascivious act upon a thirteen-year-old, K.F. Lastly, between

---

[1]Pursuant to La.R.S. 46:1844(W), the victims' initials are used to protect their identities.

August 4, 2021, and January 20, 2022, Defendant possessed pornography involving juveniles: a video of himself receiving oral sex from one of the victims.

During sentencing, the trial court summarized the events as follows:

> There are minors the age of thirteen, fourteen, fifteen, and sixteen years old. All underage teenage girls [. . .] [D]efendant used a messenger of Snapchat, to some he did not even know, to ask to watch movies. Touching was involved. Alcohol was involved. Beer filled coolers. Statements of saying Merry Christmas. Vodka, tequila, gin, Truly's [an alcoholic seltzer], and margaritas. Some of the girls became extremely intoxicated, some to the point of vomiting. Some dealt with a dab pen or a THC vape pen. It's another form of marijuana. Invitations to come over to his house. And for lack of not going into any graphic details, sex. Defendant has responses to questions asked to him, you better not tell anybody about this, because I can get arrested for this. A reply of, was it not good, sorry, if you don't ever want to hang out with me I don't blame you, I effed up. Come on, I like you, I love you, there's no girl like you, you're perfect. Again a response is that I would get into trouble with the cops. Also, there was a video of himself receiving oral sex from a teenage girl.

## ASSIGNMENT OF ERROR

Defendant asserts the trial court abused its discretion in sentencing him to the maximum sentence of twenty-five years, when he was only nineteen years old when he committed third-degree rape, his first felony offense. Defendant further argues that the trial court did not consider that he was diagnosed with Asperger's Syndrome. Case law and current scientific research, says Defendant, recognizes that young adults are emotionally and cognitively indistinguishable from juveniles, and he chose his younger victims because he saw them as peers. "In the realm of offenders convicted of third-degree rape," Defendant concludes, "he cannot be classified as the worst."

*Did Defendant waive his right to appeal?*

Defendant concedes that he had signed a waiver of appeal. He claims, however, that courts have reviewed sentences when, as is the case here, the trial

court informed the defendant of his right to appeal at sentencing, suggesting that there is no barrier preventing this court from reviewing his sentence.

For its part, the State does not dispute that the trial court informed Defendant that he could appeal his sentence. Nevertheless, the State asserts that Defendant clearly and knowingly waived his right to appeal his sentence, referring to a section from the plea form which Defendant signed:

> 10. In exchange to the above charge and sentence bargained for, I understand this matter will be finalized and waive all rights to file any post-trial motions including but not limited to an appeal of my conviction and sentence, along with Motions to Reconsider Sentence, New Trial, Amend Sentence, Request for Public Records on this case, and Post-Conviction Relief...

> 11. I agree that I will not file any motions to alter this plea agreement, including, but not limited to, motions seeking to vacate my sentence, to reduce my sentence, to appeal any parts of my sentence, to under or alter in any way any part of this plea agreement or my sentence or to withdraw my plea.

The State cites *State v. McDonald*, 54,838 (La.App. 2 Cir. 1/11/23), 354 So.3d 820, in which the second circuit held that the defendant waived his right to appeal his twenty-year sentence for felon in possession of a firearm. The defendant had signed a plea agreement which did not include an agreed-upon sentence, but the second circuit reasoned that the appeal was waived because the defendant was informed of the sentencing range, and he understood that he was waiving his right to appeal his sentence.

Although La.Code. Crim.P. art. 881.2(A)(2) states, "The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea[,]" this court has consistently held that it is "not automatically precluded from reviewing a sentence unless the plea agreement provides a specific sentence or sentencing cap." *State v. Curtis*, 04-111,

p. 2 (La.App. 3 Cir. 8/4/04), 880 So.2d 112, 114, *writ denied*, 04-2277 (La. 1/28/05), 893 So.2d 71 (citing *State v. Pickens*, 98-1443 (La.App. 3 Cir. 4/28/99), 741 So.2d 696, *writ denied*, 99-1577 (La. 11/5/99), 751 So.2d 232, *and writ denied*, 01-2178 (La. 4/19/02), 813 So.2d 1081).

In *State v. McAdory*, 17-571, p. 5 (La.App. 3 Cir. 1/4/18), 237 So.3d 539, 543 (citations omitted), this court remarked that "when a defendant agrees to an open-ended plea without a sentencing recommendation or sentencing cap, he does not waive his right to appeal the sentence received."

Additionally, in *State v. Granado*, 18-485, (La.App. 3 Cir. 12/6/18), 261 So.3d 51, *writ denied*, 19-48 (La. 9/6/19), 278 So.3d 968, this court held that since the trial court during the sentencing hearing had advised the defendant of his right to appeal or file for post-conviction relief, despite the signed plea documents containing a waiver of appeal of the defendant's sentence, the defendant did not waive his right to appeal. This court chose to review the defendant's sentence.

In this case, the trial court noted that Defendant was pleading guilty without knowing the specific sentence he would receive; the trial court twice informed him that he maintained his right to appeal his sentence. Considering the jurisprudence referenced above, Defendant's sentence is not precluded from appellate review.

*Is Defendant's sentence constitutionally excessive?*

In support of his excessive sentence claim, Defendant refers to the nature of human cognitive development. According to Defendant, a nineteen year old "has more in common with a juvenile, emotionally and cognitively, than with an older adult." He provides a summary of current scientific consensus by citing an article by Dr. Jay Giedd, a prominent researcher on the topic:

5

The most recent studies indicate that the riskiest behaviors (among adolescents) arise from a mismatch between the maturation of networks in the limbic system, which drives emotions and becomes turbo-boosted in puberty, and the maturation of networks in the prefrontal cortex, which occurs later and promotes sound judgment and the control of impulses. Indeed, we now know that the prefrontal cortex continues to change prominently until well into a person's 20s.[2]

According to a report from the United States Sentencing Commission[3], says Defendant, "there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average." *See Gall v. United States*, 552 U.S. 38, 45, 128 S. Ct. 586, 594 (2007). Defendant goes on to say that because of their lack of brain development, society generally considers juveniles to be less culpable than adults. He cites two cases. The first is *Roper v. Simmons*, 543 U.S. 551, 570, 125 S.Ct. 1183, 1195 (2005) (quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988)), where the United States Supreme Court recognized that "[t]he susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.'" The second is *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), where the United States Supreme Court acknowledged a fundamental difference between the minds of adults and juveniles, which lessens a child's moral culpability. Thus, the current scientific consensus, says Defendant, is that the average nineteen year old is not cognitively different than many juveniles.

---

[2]Jay N. Giedd, *The Amazing Teen Brain*, 312 Scientific American 32–7 (2015). Although Defendant cites this article in his brief, it was never entered into evidence. Such evidence may not be considered on appeal. *State v. Johnson*, 09-259 (La.App. 4 Cir. 9/16/09), 22 So.3d 205, *writ denied*, 09-2263 (La. 4/16/10), 31 So.3d 1054.

[3]United States Sentencing Commission *Youthful Offenders in the Federal System*, p. 5 (2017), https://www.ussc.gov/sites/default/filespdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf. Again, this does not appear in the record.

Defendant notes further that when he committed his offense, he was not the typical nineteen year old because of the cognitive shortcomings mentioned above. He claims he was developmentally delayed and abnormally slow.

Defendant argues that multiple doctors observed that he suffered from cognitive disabilities, including Asperger's Syndrome, which affected Defendant's social interaction, communication, and impulsivity. One expert, Dr. Pellegrin, believed Defendant cognitively functioned as a mid-high schooler, around age fifteen or sixteen. Given his age and his cognitive development, Defendant concludes that he cannot be considered among the worst type of offender, for whom the maximum sentence is reserved.

The State asserts that the trial court provided an adequate factual basis for the sentence imposed, considering all of Defendant's criminal behavior and the nature of his crime, and though the sentence was the maximum sentence, it fell far short of the maximum sentence he could have received if he had not pled guilty. Be pleading guilty, Defendant received not only the benefit of an amended indictment containing fewer charges but also the benefit of a recommendation of concurrent sentences, greatly limiting his sentencing exposure. The sentence he received, the State concludes, was not excessive.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment."

To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Here, Defendant received the maximum sentence of twenty-five years. On appeal, we review whether the trial court abused its discretion and not whether another sentence would be more appropriate. After considering the nature of the crime, the nature and background of Defendant, and the sentences imposed in similar

cases, Defendant's sentence of twenty-five years at hard labor without benefits is not constitutionally excessive.

Defendant supplied alcohol to several underage teenage girls, got them drunk, and then performed sex acts on some of them. Evidence regarding at least four different victims showed that he preyed on minor girls–thirteen to sixteen years old, in middle school, some without even a driver's license–exploiting them to satisfy his sexual desires. When committing the charged offenses, Defendant constantly asked girls not to tell on him because he could get arrested for his acts. Defendant's victims suffered physical injuries, psychological and emotional harm, anxiety, depression, loss of the ability to relate to others, and endured harassment from the community.

Defendant was nineteen years old when he committed these acts. He was a first-time offender, described as obsessive, manipulative, and compulsive, having a history of cognitive issues for which he did seek treatment. He had a high school education, little work experience, and strong family support. Defendant expressed remorse for his actions.

The trial court, during sentencing, provided a case to shed light on its reasons for imposing the maximum sentence: *State v. Wagnon*, 18-446 (La.App. 3 Cir. 12/6/18), 261 So.3d 60. There, the twenty-seven-year-old defendant committed third-degree rape, involving anal rape and oral sexual battery of several intoxicated juveniles. He entered guilty pleas to three counts of oral sexual battery and to one count of third-degree rape, receiving seven years for each count of sexual battery and twenty years for his third-degree rape offense, all set to run concurrently. These sentences were affirmed, and Defendant notes this decision in his brief, "*Wagnon* involved a far older defendant and a much larger age gap between the victims and

offender." In affirming the defendant's sentence, however, a panel of this court stated:

> [T]he defendant in this case received substantial benefit from his plea agreement. Had he been convicted as originally charged, he would have been exposed to possible sentences of up to ten years on each of five counts of oral sexual battery, up to ten years for sexual battery, up to seven years and a $5,000 fine for indecent behavior with a juvenile, and up to twenty-five years for third degree rape. Thus, the defendant was exposed to a total possible sentence of ninety-two years in prison and a $5,000 fine. Even on the charges to which the defendant pled guilty, he was exposed to possible sentences totaling fifty-five years in prison. However, and despite the time period over which the separate offenses occurred, the trial court imposed concurrent sentences, resulting in a significant benefit to the defendant. *See* La.Code Crim.P. art. 883. *See also* [*State v.*] *Fruge*, [14-1172 (La. 10/14/15)], 179 So.3d 579.[4]

*Wagnon*, 261 So.3d at 67 (footnote omitted).

In *Fruge*, the Louisiana Supreme Court upheld a maximum sentence of twenty-five years for a defendant convicted of simple rape, arising from incidents during which he took advantage of different intoxicated young women years apart. The supreme court explained:

> Important to the consideration of the excessiveness of the simple rape sentence is the fact that the district court ordered the sentences in this case to run concurrently. Under La.C.Cr.P. art. 883, it is presumed that consecutive sentences are ordinarily appropriate for crimes, as in the instant case, that do not form part of the same transaction or series of transactions. Apparently because defendant was a first-time felony offender, the district court, after considering the sentences imposed for the forcible rape conviction and the simple rape conviction, believed that the imposition of concurrent rather than consecutive sentences was proper.

> The crime of simple rape presupposes that the defendant has taken advantage of the victim's abnormal state of mind induced by intoxication or any other cause. *See* La.R.S. 14:43(A). That a defendant may have taken advantage of an unconscious or sleeping victim alone does not place him among the most blameworthy of offenders committing the crime of simple rape. Nevertheless, the evidence related

---

[4]*Fruge*, 179 So.3d 579, reversed this court's decision in *State v. Fruge*, 13-1386 (La.App. 3 Cir. 5/7/14), 139 So.3d 602. The supreme court also issued a writ denial at 14-1180 (La. 10/14/15), 179 So.3d 595.

to the similar sexual assaults in this case shows that this defendant had engaged in a pattern of preying on young, incapacitated women, a factor the district court was free to consider in rendering the sentences in this case. Considering defendant's 2006 rape of J.H. in the context of his behavior over an extended period of time, rather than in isolation, we are unable to find that the district court manifestly abused its broad sentencing discretion by imposing the maximum term of imprisonment for the rape of J.H., particularly since the district court would have been justified in ordering consecutive sentences in this case, thus, extending the period for parole ineligibility. Under the facts of this particular case, the reduction in sentencing exposure that defendant received by the district court's decision to order the sentences to run concurrently supports the constitutionality of defendant's simple rape sentence.

*Id.* at 584–86 (footnotes omitted).

In *State v. Green*, 16-938 (La.App. 3 Cir. 7/19/17), 248 So.3d 360, *writ denied*, 17-1348 (La. 4/27/18) 239 So.3d 836, the defendant committed simple rape of a seventeen-year-old victim after providing the victim with alcohol. The victim passed out and awoke to the defendant on top of her, performing sexual intercourse. The defendant was at least thirty years older than the victim at the time of the offense. When he was seventeen years old, the defendant had been convicted of aggravated burglary and aggravated rape. In affirming the defendant's sentence, this court cited *Fruge* and *State v. Despanie*, 06-1269 (La.App. 3 Cir. 2/7/07), 949 So.2d 1260. "Here," this court said, "while Green did not receive a benefit from a plea bargain, Green has a felony history that Despanie did not have." *Green*, 248 So.3d at 392.

In *Despanie*, 949 So.2d 1260, the defendant (charged originally with aggravated rape) pled no contest to simple rape, his first felony offense. He was a nineteen-year-old certified nursing assistant working at a long-term care facility and was observed having sex with a ninety-two-year-old female resident suffering from dementia. This court, noting that the defendant's credibility was seriously questionable and that he received a significant benefit from his plea bargain, upheld the maximum sentence.

11

In his brief, Defendant provides a string of cases to support his assertions that, in cases of simple rape, the maximum penalties were reserved for older adults or more egregious behaviors, and the courts have affirmed or overturned as excessive far lower sentences when the conduct was like or worse than his offense. These include *State v. Henderson*, 22-795 (La.App. 1 Cir. 2/24/23), 361 So.3d 1028 (maximum sentence was affirmed for a twenty-four-year-old second-time offender, whose thirteen-year-old victim was a cousin); *State v. Britton*, 22-476 (La.App. 5 Cir. 5/10/23), 366 So.3d 652 (fifteen-year sentence was overturned regarding a defendant who had repeatedly abused his stepdaughter, including incidents of anal penetration, from age twelve to fourteen); and *State v. Clark*, 05-647 (La.App. 3 Cir. 12/30/05), 918 So.2d 552 (fifteen-year sentence was found excessive, regarding a first felony offender who was thirty-one when he engaged in what he claimed to be consensual sex with the victim).

Notably, unlike Defendant's case, in *Henderson*, *Britton*, and *Clark*, the defendants were convicted by jury trial. Their sentences were not imposed after receiving reduced sentencing exposure by plea agreement.

### DECREE

Accordingly, considering the nature of Defendant's crime, his nature and background, and the similar sentences imposed, the trial court did not abuse its discretion. The State's offer of concurrent sentencing shielded Defendant from the possibility of sixty-four years in prison. By pleading guilty, Defendant greatly benefited from that offer, and that benefit supports the constitutionality of his maximum sentence. Defendant's sentence is affirmed.

**AFFIRMED.**